McBRIDE v. KINGMAN et al. SAME v. SICKELS et al. SAME v. RAN-
DALL et al. SAME v. AINSWORTH et al.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1899.)

Nos. 898, 1183–1185.

1. PATENTS—CONSTRUCTION OF CLAIMS—INFRINGEMENT.

A patentee, who has simply made an improvement on a device that
performed the same function before as after the improvement, is protected
only against those who use the very improvement that he describes and
claims, or merely colorable evasions of it.

2. SAME—ENLARGING CLAIM.

The claims of a patent covering in terms only improvements in the de-
vices or mechanism forming certain parts of a machine, cannot be enlarged
to include other parts or elements not enumerated in the claims, although
they may be shown by the specification and drawings, merely because they
are essential parts of the machine as a whole, without which it would
not be operative.

3. SAME—ESTOPPEL OF PATENTEE BY CLAIMS—SECOND PATENT.

The statute (Rev. St. § 4888) requires an inventor to particularly point
out and to claim distinctly the improvement or combination which he claims
as his discovery, and when he has made his claims he has thereby dis-
claimed and dedicated to the public all other devices, combinations, and
improvements apparent from his specification and claims that are not
mere evasions of those claimed as his own, and he is estopped by his pat-
ent from thereafter claiming a monopoly as to such devices, combinations,
or improvements either under that or any subsequent patent.

4. SAME—RIDING ATTACHMENTS FOR PLOWS.

The McBride patent, No. 199,082, for improved riding attachments for
plows, was not for a primary invention covering broadly, in combination
with the other devices described and claimed, a device for carrying a
plow upon wheels, or for holding it rigidly in a fixed relation to the wheels
or to the axle for the purpose of regulating the depth of the furrow, but is
limited, both by the prior state of the art and by the claims themselves,
to the combination of the mechanism described for raising and lowering
the forward end of the beam, and for canting the plow from side to side.
Nor was the attempt of the patentee by his subsequent patent, No. 284,·
036, to add to the combination the device for rigidly attaching the plow to
the axle effective, as such device was disclosed by the specification of the
earlier patent, but omitted from the claims.

Appeal from the Circuit Court of the United States for the South-
ern District of Iowa.

Silas C. Sweet and A. B. Cummins, for appellant.

A. H. McVey and C. A. Dudley (Edmund H. McVey and N. E.
Coffin, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. These are appeals from decrees which
dismissed bills exhibited against the appellees for infringement of
letters patent No. 199,082, issued January 8, 1878, and No. 284,036,
issued August 28, 1883, to the appellant, John H. McBride, for im-
proved riding attachments for plows. The circuit court delivered a
careful and exhaustive opinion, which will be found in 72 Fed. 908,
and the issues in this court have been narrowed to a single question.
It is whether the appellant invented and secured by these patents

"the combination of a plow beam rigidly attached to a hinged axle, with appropriate mechanism for raising and lowering the front end of the beam, appropriate mechanism for tilting the plow from side to side, with wheels for the axle and the combining devices necessary to make the implement an operative machine," as his counsel insist, or a mere combination of old devices for raising and lowering the forward end of the beam of the plow and for tilting or canting the plow from side to side, as the court below found. It is conceded that McBride did not conceive the idea of raising and lowering the forward end of a plow beam in a wheel plow, and that he did not invent the first mechanical device to accomplish that end. It is conceded that the idea of tilting or canting the plow from side to side to determine the width of the furrow was old, and that appropriate mechanism to accomplish this purpose had been in use upon riding plows long before McBride invented his improvements. And it is conceded that the devices used by the appellees differ so widely from those described in the patents to McBride that they do not infringe upon them unless McBride first described and secured by his patents a combination not only of the devices for raising and lowering the forward end of the plow beam, and for tilting the plow from side to side, but also for rigidly attaching the plow beam to an axle borne by wheels, so that the wheels upon the axle would carry the plow, and determine the exact depth in the ground to which it might descend. In the briefs before us, counsel for McBride specify but three assignments of error upon which they rely, and these are all based on the single assertion that the court below erred because it did not hold that McBride invented and secured as a part of the combination specified in claims 1 and 3 of his patent of 1878 the first operative mechanical device by which a plow was rigidly attached to an axle borne by wheels so that it would maintain a fixed relation to the wheels and the axle as the plow was operated through the ground. They insist that the beam of every prior plow was free to move up and down, without regard to the plane upon which the wheels might be running, and that the new idea involved in the appellant's plow was in attaching the plow proper or plow beam rigidly to the axle, and thus allowing the wheels, upon which the plow rides, to determine the exact position of the bottom of the plow.

A careful examination of the patents upon which this suit is based and a survey of the state of the art when McBride made his invention, which has been illustrated by more than 50 prior patents, has failed to convince us that the position of the counsel for the appellant can be maintained. Two controlling reasons have led us to this conclusion. They are: (1) That McBride was not the first to conceive the idea or to invent and describe a mechanism for the purpose of rigidly attaching a plow to an axle so that it would maintain a fixed relation to the wheels which support it; and (2) that he did not claim any such mechanical device as a part of the combination which he described as his invention in his patent of 1878. He made his application for this patent on March 17, 1877, and it was issued on January 8, 1878. In letters patent No. 19,077, issued on January 12, 1858, to M. A. Cravath, three gang plows are shown rigidly attached to a

frame the forward end of which is borne on an axle supported by two wheels, and the rear end upon an axle borne by one wheel, so that, as the inventor says in his specification, "the weight of the plow and the downward and side pressure involved in raising and turning over the furrow slice are transferred from the sole and land side of the plow to lubricated axles, enabling the land-side plate and bar to be entirely dispensed with, and reducing the draft at least one-third." In letters patent No. 111,226, issued on January 24, 1871, to John R. McConnell, there are drawings and a description of two gang plows, the rear ends of the beams of which are rigidly attached to an axle borne by two wheels, while their forward ends are supported by the axle of a caster wheel, and are raised and lowered by the driver at will by moving a lever within his reach. These plows are carried, and the depth of their cut is limited, by the wheels which bear the axles, and they are supported in a fixed relation thereto while they are in operation. In letters patent No. 131,063, issued to William Mason on September 3, 1872, a drawing and description of a sulky plow appear, the rear end of the beam of which is journaled on an axle borne by two wheels, while the forward end is supported by a lever which rests on a frame and tongue carried by three wheels. The lever is used to raise and lower the forward end of the beam, and is provided with a perforated bar and pin to secure it in any desired position when the plow is at work. The specification and drawing of this patent show a plow which is rigidly attached, when it is in operation, to axles borne by three wheels, so that the wheels carry the plow and maintain all its parts in a fixed relation to them and to the axles upon which they turn. There are other patents in this record which disclose mechanical devices which were conceived prior to 1877, and by which plows were rigidly attached to axles, so that they maintained a fixed relation to them and to the wheels which supported them while they were in operation. It would be a work of supererogation to describe and review them, for it cannot be held, in view of those to which we have already referred, that McBride was either the first to conceive the idea of holding the plow and the wheels in this fixed relation, or that he was the first to invent a mechanism by which this result was accomplished. He certainly was not a pioneer here, and his invention in this regard, if he made any, was by no means a primary one. If he invented or secured anything in the device by which he connected his plow with his wheels, it was not more than the particular mechanism by which he secured this fixed relation and mere colorable evasions of it, and the mechanical means used by the appellees differed too radically from his device to constitute any infringement upon it.

A patent to the original inventor of a machine which first performs a useful function protects him against all mechanisms that perform the same function by equivalent mechanical devices, but a patent to one who has simply made a slight improvement on a device that performed the same function before as after the improvement is protected only against those who use the very improvement that he describes and claims, or mere colorable evasions of it. Stirrat v. Manu-

facturing Co., 27 U. S. App. 30, 42, 10 C. C. A. 216, 217, and 61 Fed. 980, 981; P. H. Murphy Mfg. Co. v. Excelsior Car-Roof Co., 40 U. S. App. 200, 215, 22 C. C. A. 658, 665, and 76 Fed. 965, 972; Adams Electric Ry. Co. v. Lindell Ry. Co., 40 U. S. App. 482, 499, 23 C. C. A. 223, 231, and 77 Fed. 432, 440. Moreover, the appellant did not claim as a part of his invention, when he procured his patent, any mechanism or device whereby the plow was carried by and held rigidly in a fixed relation to the axle or to the wheels. These are the claims upon which his counsel rely for this device:

(1) "In combination with the plow beam and hinged axle, the lever, B, having the combined rack and fender, y, and lever, B², provided with a spring latch, z, substantially as and for the purposes shown and described." (3) "The vertical lever, B, having the combined rack and fender, y, and the gravitating latch, h, the hinged axle, C, carrying the wheel, D, and rack, g, the jointed fulcrum, t, clamping the colter, wx, the horizontal lever, B², having a spring latch at its rear end, and carrying a caster wheel at its front end, and the hinged and adjustable brace, m; when arranged and combined to operate substantially as and for the purposes shown and described."

This is a copy of the drawing, which illustrates these claims:

J. McBRIDE.
Plow-Attachment.

No. 199,082.		Patented Jan. 8, 1878.

Witnesses:	Inventor:
M. E. Orwig.	John McBride,
Arthur Stinson.	By Thomas G. Orwig,
	Attorney.

The specification defines and describes the various parts mentioned in the claims in this way:

"A represents the beam of a common right or left hand plow. B is a vertical lever, rigidly clamped to the rear portion of the plow beam by means of bolts, or in any suitable way. C is a horizontal axle, hinged at right angles to the lower end of the vertical lever, B. D is a traction wheel, mounted upon the free end of the hinged axle, C. g is a rack, of segmental form, rigidly fixed to the outer portion of the axle, C, to connect with the vertical lever, B, and serve as a means of bracing the axle and adjusting it, as required, to govern the width of the furrow cut by the advancing plow. h is the handle of a gravitating latch pivoted to the vertical lever, B, to engage and lock the rack, g, and axle, C, rigidly to the lever, B. J is the plowman's seat. carried by the axle, C, and its supporting wheel, D. k is a combined brace hinge and caster-shaft bearing, rigidly fixed to the front end of the plow beam in any suitable way. m is the curved front end of an axle brace, connected with the hinge, k, in such a manner that the rear end of the brace can have vertical play. The rear end of the brace, m, is connected with the axle, C, in such a manner that it can be readily lengthened and shortened to regulate the gather of the wheel, D, and thereby aid in governing the width of furrow. r is a caster-shaft bearing, formed integral with the hinge plate, k, clamped to the front end of the plow beam. s is the vertical shaft of a caster wheel, passed through the bearing, r, and connected at its top end with an adjustable and horizontal lever, B². t is my adjustable and jointed fulcrum, carrying the lever, B², and also clamping the colter, wx, rigidly to the plow beam. * * * y is my combined rack and fender, rigidly fixed to the vertical lever, B, to combine, adjust, and lock the two levers, B and B², rigidly together. z is a spring latch, carried by the lever, B², to engage the rack y, and thereby lock the lever in a fixed position, as required, to retain the caster wheel carried at its front end at such various elevations relative to the plow beam as may be necessary to govern the depth of the plow and the thickness of the furrow slice cut loose and turned by the plow as it advances. a is an anti-friction roller or caster wheel, carried by a bearer that is rigidly clamped to the beam in such position relative to the heel of the land side that it will relieve the land side from much friction, and thereby lessen the draft power required to operate the plow."

The question is whether or not the appellant has claimed as a part of his invention any mechanism which carries the plow in a fixed relation to wheels which gauge the depth to which it may sink into the earth while it is in operation. It is plain that the only wheels described in the drawing and specification which might accomplish this purpose are the supporting wheel, D, which is journaled on the hinged axle, C, and the anti-friction roller or caster wheel, a, the bearer of which is "clamped to the beam in such position relative to the heel of the land side that it will relieve the land side from much friction." But this anti-friction roller clamped to the beam is nowhere claimed as a part of the invention, and without it the plow could not be carried in a fixed relation to the wheels, nor could the depth of its plowing be gauged by them. It is strenuously argued that this anti-friction roller was essential to an operative riding plow, and that it must, therefore, be implied without specific mention. Let it be conceded that this argument is well founded if McBride's invention was a plowing machine, or a combination of a device for carrying the plow on wheels, a device for raising and depressing the forward end of its beam, and a device for canting or tilting it. But the very question

at issue is whether or not it was a combination of these three devices, or of the last two only. The argument, therefore, begs the very question in dispute, and has no cogency. It assumes that the invention was a combination of the three devices, and then insists that one of them, which is not mentioned in the claims, was a part of that combination, because without it the invention would be a combination of only two devices.

It is next contended that the word "axle" necessarily means an axle carried by two wheels, and hence that the term "hinged axle" in the claims of the patent describes not only the hinged axle, C, but also the lower end of the vertical lever, B, the plow beam, and the bearer which carries the anti-friction roller, a, and which is clamped to the beam; so that the claim of the "hinged axle" includes all these elements as a part of the combination. This position, however, is refuted by the specification itself. The patentee has there defined the term "hinged axle" as he has used it in this patent, and has clearly limited its meaning to the bearer which is supported by the wheel, D, at one end and by the lower end of the vertical lever, B, at the other. He says: "C is a horizontal axle, hinged at right angles to the lower end of the vertical lever, B. D is a traction wheel, mounted upon the free end of the hinged axle, C. * * * J is the plowman's seat, carried by the axle, C, and its supporting wheel, D." The "hinged axle," then, had but one free end. The other end was hinged to the lower end of the vertical lever, B, and it did not extend from that lever through the plow beam and through the bearer into the roller, a. It had but one supporting wheel, "its supporting wheel, D," and it did not extend into another supporting wheel, the anti-friction roller, a. There seems to be nothing in the specification or in the claims of this patent to indicate that McBride ever thought that he had invented, or had brought into his combination, or that he ever intended to secure as a part of it, any mechanical device for carrying his plow upon wheels, or for holding it rigidly in a fixed relation to the wheels or to the axle. On the other hand, the claims themselves, the specification, and the history of the application, which is disclosed by the file wrapper and its contents, point with unerring certainty to the conclusion that this patentee secured nothing here but the means of combining a device for canting the plow with a mechanism for raising and lowering the forward end of its beam. He gave notice of no other invention, of no broader combination, in his claim. He described nothing more in his specification. Speaking there of the scope of his invention, he said:

"It consists in a combined rack and fender fixed to a vertical lever, and an adjustable jointed fulcrum, adapted to carry a horizontal lever and to clamp a colter to the plow beam, being used as an improved means for advantageously combining a horizontal hinged axle, carrying a wheel and a segmental rack to govern the width of the furrow cut by the plow, and a horizontal lever carrying a caster wheel at its front end to govern the depth of the plow, all as hereinafter fully set forth."

In other words, he declared that it was an improved means for combining a device to cant the plow with a device to raise and lower

its forward end, and that it was that only. The history of his application confirms this view. It was rejected three times, because the claims which it contained were anticipated by prior patents, and McBride amended it, and limited these claims four times, before his patent was finally issued. In his original application he said: "I am aware that wheel plows and riding attachments for plows have been used, but I claim that my manner of arranging and combining the various parts so as to bring the adjusting levers together at the side of the operator's seat so that the plowman can govern the width and depth of a furrow without inclining his body to reach and operate the levers, and without changing his center of gravity to unbalance the plow, is a new and valuable improvement"; and he nowhere declared, and never claimed, either in his original application or in any of his amendments, that he had conceived the idea, or invented, or combined with his levers, the mechanical means of holding the plow in a fixed relation to the wheels and axle which carried it.

The statute requires the inventor to particularly point out and to claim distinctly the improvement or combination which he claims as his discovery. Rev. St. § 4888. When, under this statute, the inventor has made his claims, he has thereby disclaimed and dedicated to the public all other combinations and improvements apparent from his specification and claims that are not mere evasions of the device, combination, or improvement which he claims as his own. While the patent is notice of the claims which it contains and allows, it constitutes an estoppel of the patentee from claiming under that or any subsequent patent any combination or improvement there shown which he has not clearly pointed out and distinctly claimed as his discovery or invention when he received his patent. It is a complete and a legal notice to every one—notice on which every one has a right to rely—that he may freely use such improvements and combinations without claim or molestation from the patentee. It would constitute rank injustice to permit an inventor, after a combination or device that he did not distinctly claim in his patent had gone into general use, and years after his patent had been granted, to read that combination or device into one of the claims of his patent, and to recover for its infringement of every one who had used it upon the faith of his solemn declaration that he did not claim it. This would be the effect of a reversal of the decree below. This patent was issued more than 21 years ago. No mechanical device for rigidly attaching and securely holding the plow in a fixed relation to the axle and the wheels which carried it was pointed out or claimed in it as a part of the combination which it secured. During all these years manufacturers of wheel plows have rigidly attached them and held them in fixed relations to the axles and wheels which carried them by various mechanical devices without notice from this patent that the appellant had ever claimed or secured a monopoly of their use, and the claims of his patent are utterly insufficient to sustain such a monopoly. Building Co. v. Eustis, 27 U. S. App. 693, 709, 13 C. C. A. 143, 145, and 65 Fed. 804, 807; Stirrat v. Manufacturing Co., 27 U. S. App.

13, 47, 10 C. C. A. 216, 220, and 61 Fed. 980, 984; Adams Electric Ry. Co. v. Lindell Ry. Co., 40 U. S. App. 482, 514, 23 C. C. A. 223, 241, and 77 Fed. 432, 451.

The claim by the appellant in his letters patent of August 28, 1883, —No. 284,036,—of the combination of his device for rigidly attaching the plow to the axle with the two devices the combination of which was secured by the patent of 1878, was futile. The combination claimed in 1883 was shown in the drawing and specification of the earlier patent, but it was not claimed, and it was thereby irrevocably dedicated to the public by the appellant. A description of a device or combination which is not claimed in the drawings or specification of a patent estops the patentee from securing a monopoly of its use by a subsequent patent as well as by any other means. James v. Campbell, 104 U. S. 356, 382; Adams v. Stamping Co. (C. C.) 28 Fed. 360, 365. The decrees below are affirmed.